741 N.W.2d 184 (2007)
16 Neb. App. 153
Douglas BAILEY and Lee Ann Bailey, appellants,
v.
FIRST NATIONAL BANK OF CHADRON, appellee.
No. A-06-060.
Court of Appeals of Nebraska.
November 13, 2007.
*187 John F. Simmons, of Simmons Olsen Law Firm, P.C., Scottsbluff, for appellants.
Michael V. Smith, of Smith, King & Freudenberg, P.C., Gordon, for appellee.
Inbody, Chief Judge, and CARLSON and MOORE, Judges.
MOORE, Judge.

I. INTRODUCTION
Douglas Bailey and Lee Ann Bailey filed a complaint against First National Bank of Chadron (FNBC) in the district court for Dawes County, alleging that FNBC was required to release them from their guaranties of certain loans and that FNBC wrongfully set off $57,726.17 out of a certificate of deposit to pay debts guaranteed by the Baileys. The Baileys further alleged that FNBC instructed the buyer of certain assets of Bailey Tire and Service, Inc. (Bailey Tire), a company owned by the Baileys, to convert $27,179.06 of Bailey Tire assets not included in the sale. The Baileys sought judgment against FNBC for $84,905.23. FNBC filed a motion for summary judgment. The Baileys filed a motion seeking to amend their complaint and also filed a motion for partial summary judgment. The district court denied the motion to amend and entered summary judgment in favor of FNBC. The Baileys have appealed. Because we find that the district court abused its discretion in denying the Baileys' motion to amend the complaint, we reverse, and remand for further proceedings.

II. BACKGROUND

1. ORIGINAL COMPLAINT FILED
The Baileys filed a complaint against FNBC in the district court on June 21, *188 2005. The Baileys alleged that they were stockholders in Bailey Tire and that FNBC at various times had loaned money to Bailey Tire, which loans were guaranteed by the Baileys in their individual capacities.
The Baileys alleged that on or about February 1, 2002, the parties executed a document entitled "`Amendment to Loan Agreement'" but they did not specify any further details about the original loan documents in their complaint. The Baileys alleged that pursuant to their obligations under the amendment to the loan agreement, the Baileys executed a written instrument guaranteeing a $350,900 loan to an entity called I.M.S.H., Inc. (IMSH), which money was loaned to IMSH by FNBC to facilitate the purchase of certain assets of Bailey Tire by IMSH.
The Baileys further alleged that the parties' February 2002 amendment document was itself amended by a letter agreement dated April 3, 2002, that the Snail Business Administration (SBA) agreed to guarantee the loans described in the April 2002 letter, and that according to the parties' amendment document, the Baileys' guaranty obligations were therefore terminated.
The Baileys alleged that despite the parties' agreements, on February 21, 2003, FNBC set off, on a certificate of deposit owned by the Baileys, the sum of $57,726.17 to pay the debts of third parties guaranteed by the Baileys. The Baileys alleged that FNBC controlled the transaction between Bailey Tire and IMSH; that at the direction of FNBC, IMSH took $27,179.06 in inventory from Bailey Tire not included in the sale; and that absent the wrongful act of FNBC in converting this inventory, the sum of $27,179.06 would have been available to the Baileys to reduce their obligations to FNBC under their guaranty. The Baileys sought judgment in the amount of $84,905.23.

2. DOCUMENTS ATTACHED TO ORIGINAL COMPLAINT
The Baileys attached copies of the following documents to their original complaint:

(a) February 2002 Amendment to Loan Agreement
On February 1, 2002, the Baileys, Bailey Tire, and FNBC entered into an agreement amending a September 27, 2001, loan agreement. The amendment document described certain notes referenced in the original loan agreement and the balance due on one of those notes. In the amendment document, the parties agreed that certain assets of the Baileys and Bailey Tire would be sold to IMSH, an entity to be formed by Phillip Darley and Jerry Yanke, and that he proceeds of the sale would be applied to one of the notes referenced in the original loan agreement. The Baileys specifically acknowledged that the financial status of Bailey Tire lad deteriorated substantially since the date of the September 2001 loan agreement.
The February 2002 amendment to the loan agreement contained provisions regarding equity support for the sale of Bailey Tire to IMSH, as follows:
The [Baileys and Bailey Tire acknowledge] that IMSH will require equity support to complete its purchase from [Bailey Tire]. [The] Baileys agree to furnish up to One Hundred Thousand Dollars ($100,000.00) to IMSH or its shareholders in a manner that will constitute equity for IMSH's loan.
To assist [the] Baileys in providing equity support, [FNBC] will loan [the] Baileys up to $35,000.00 for such purpose which shall be secured by real estate owned by [the] Baileys and which [the] Baileys will lease to IMSH. This *189 loan obligation will be payable in full on or before March 1, 2002.
Further, [FNBC] will agree to loan [the] Baileys an additional $65,000.00 for such purpose providing an SBA loan guarantee is obtained by IMSH. If an SBA loan guarantee is obtained, [FNBC] will combine the existing loan of $35,000.00 with an additional loan of $65,000.00 for a total of $100,000.00. Such loan shall be secured by real estate owned by [the] Baileys and which [the] Baileys will lease to IMSH. The loan of $100,000.00 will be payable in sixty equal monthly payments along with accrued interest. [The] Baileys will service such loan from lease payments received from IMSH. If an SBA guarantee is not obtained, then renewal of the $35,000.00 note shall be at the sole discretion of [FNBC].
In the February 2002 amendment agreement, the Baileys also agreed to guarantee a $350,000 loan from FNBC to IMSH, which IMSH would in turn use to pay Bailey Tire. The 2002 agreement specifically provided:
The Baileys hereby guarantee the repayment of the $350,000.00 loan made by [FNBC] to IMSH as described in separate guarantees to be executed by the Baileys. Said guarantees will be collateralized with real estate that presently collateralizes their guarantee to the bank. The $350,000.00 loan will be evidenced by a promissory note payable in full on or before March 1, 2002. If an SBA guarantee is obtained, [FNBC] will release [the] Baileys from their guarantee obligation of this loan. If an SBA guarantee is not obtained, then renewal of the $350,000.00 loan will be at the sole discretion of [FNBC].
The 2002 amendment agreement also contained the following clause:
[The Baileys and Bailey Tire acknowledge] that [FNBC] is accommodating [the Baileys and Bailey Tire] in an effort to assist in sale of assets and liquidation to meet [their] obligation with [FNBC]. [The Baileys and Bailey Tire], in consideration of this agreement, along with other accommodations provided to [the Baileys and Bailey Tire] by [FNBC], [agree] to hold [FNBC] harmless from and assert no claim or past or present claims, or course of action adopted by the parties hereinbefore or hereinafter, and which claims the [Baileys and Bailey Tire] may assert against [FNBC] whatsoever. [The Baileys and Bailey Tire] hereby [release FNBC] from all claims, causes of action, demands and liabilities of any kind whatsoever, whether direct or indirect, fixed or contingent, liquidated or non-liquidated, disputed or undisputed, known or unknown, which [the Baileys and Bailey Tire have] or may have or may claim relating in any way to any event, indebtedness, [FNBC-Baileys and Bailey Tire] relationship, circumstance, action or failure to act.

(b) April 2002 Supplementary Letter Agreement
Also attached to the original complaint was a letter from the president of FNBC to the Baileys, dated April 3, 2002. The April 2002 letter provided as follows:
This is in regard to the loan agreement of September 27, 2001 and an addendum to the agreement of February 1, 2002.
As you are aware, IMSH was unable to obtain an SBA [loan] as planned. However, IMSH has received a conditional commitment for a $150,000 SBA low doc loan on the Scottsbluff location [of Bailey Tire]. The remaining unguaranteed (by SBA) debt of $200,000 will be on the Chadron, Alliance and *190 Fort Morgan locations [of Bailey Tire].... Darley plans to purchase the assets of these locations from IMSH for $200,000. An interim loan may be made to [Darley] and Ms. Darley maturing May 1, 2002. [Darley] will need to secure long term financing. We will require that IMSH. [Yanke] and the both of you guaranty repayment of the $200,000. The renewal of this loan will be at the sole discretion of the bank.
You will be released from your prior $350,000 guaranty once all documentation is in place for the $150,000 SBA low doc loan to IMSH. A formal lease agreement must be received on the Scottsbluff location. Your $200,000 guaranty will remain in full force.
If these terms are agreeable to you, we will initiate item # 2 (Purchase Equity Support) of the addendum to the agreement, and extend the maturity of note # 2 of the original loan agreement to July 1, 2002 in accordance to the liqui[d]ation plan submitted to the bank on February 15, 2002 and February 26, 2002. Please keep in mind that the agreement and addendum remain in full force. All modifications to these agreements must be in writing.
The Baileys individually, and Douglas Bailey as president of Bailey Tire, signed at the bottom of the letter agreement, indicating their acknowledgment of and agreement to the terms of the letter agreement.

3. FNBC's ANSWER
FNBC answered on July 18, 2005. FNBC admitted that FNBC had loaned money to Bailey Tire, which loans were individually guaranteed by the Baileys. FNBC also admitted signing the amendment document and the letter agreement of April 3, 2002, but it generally denied the remaining allegations of the complaint.
FNBC affirmatively alleged that it held a first lien on Arizona real estate owned by the Baileys as security for their indebtedness, that the Baileys sold that real estate and used $100,000 of the proceeds for a certificate of deposit, and that the Baileys pledged the certificate of deposit as a substitution of collateral to FNBC on April 19, 2002, as consideration for financial accommodation given by FNBC:o Bailey Tire and others, collateralizing guaranties given by the Baileys to FNBC.
FNBC alleged that it made the $350,000 loan to IMSH at the Baileys' request to accommodate IMSH in the purchase of assets owned by Bailey Tire, which loan was guaranteed by the Baileys. FNBC further alleged that after IMSH failed to pay off the loan guaranteed by the Baileys, FNBC set off $57,726.17 against a certificate of deposit owned by the Baileys to pay debt owed to FNBC by IMSH.
FNBC alleged that in consideration of the accommodation made by FNBC to the Baileys and Bailey Tire, the Baileys released FNBC from all claims against FNBC relating to the guarantees made by the Bailey;. FNBC specifically alleged that the Baileys released FNBC from any claims that might be available to the Baileys with respect to the setoff of the Baileys' funds in FNBC's bank.
FNBC asked that the Baileys' complaint be dismissed by the district court.

4. FNBC FILES MOTION FOR SUMMARY JUDGMENT
On November 7, 2005, FNBC' filed a motion for summary judgment, seeking dismissal of the Baileys' complaint and alleging that the pleadings and admissions on file, including the exhibits attached to the pleadings, showed that there was no genuine issue as to any material fact and that FNBC was entitled to judgment as a matter of law.

*191 5. BAILEYS FILE MOTION TO AMEND COMPLAINT
On November 14, 2005, the Baileys filed a motion for leave to amend their complaint. The Baileys attached an amended complaint draft to their motion. In the proposed amended complaint, the Baileys attempted to include claims for mutual mistake and fraudulent misrepresentation, as well as conversion, in addition to what they alleged previously.
In one paragraph of the proposed amended complaint, the Baileys stated:
[The Baileys] allege that at the time of the execution of [the February 2002 amendment document] and [April 2002 letter agreement,] they relied in good faith on the representations of [FNBC], which held itself out to be knowledgeable in such matters, that [an SBA] guarantee was possible. In fact SBA regulations and operating procedures forbade the approval of the loan the parties contemplated. [FNBC's] representation that an SBA guarantee was possible was untrue, was made with the intention that the [Baileys] act upon the representation, was recklessly or negligently made, and was a mistake "as to a basic assumption on which the contract was made," and "ha[d] a material effect on the agreed exchange of performances," within the meaning of Restatement of the Law of Contracts 2d, §§ 152-154. [The Baileys] allege further that [FNBC], as a national bank, held itself out as an expert in financial matters and if it was not aware that SBA regulations forbade the loan guarantee, it should have been aware of that fact. [The Baileys] therefore allege that [FNBC] bears the risk of the mistake.... [The Baileys] would never have executed the contracts of February I, 200[2] and April 3, 2002 had they been aware that an SBA guarantee was not possible. In view of [FNBC's] misrepresentation regarding whether an SBA guarantee was possible, [the Baileys] are entitled to and do hereby avoid the contract of February 1, 2002 as amended by the letter agreement of April 3,[]2002. [The Baileys] show that they were induced to execute these contracts as a result of [FNBC's] negligent or reckless representations and that they have suffered damages as a result of those representations.
The Baileys alleged that they paid IMSH and its stockholders $100,000 pursuant to the February 2002 amendment document and that they would not have done so had it not been for the contract formed by that document, which they alleged had been made on FNBC's assurance that an SBA loan guarantee was possible. Further, with respect to FNBC's setoff of the certificate of deposit "to pay the debts of IMSH and [the Darleys] purportedly guarant[e]ed by [the Baileys]," the Baileys again alleged that they would not have guaranteed these obligations had it not been for the misrepresentations of FNBC concerning whether an SBA loan guaranty was possible.
With regard to the alleged conversion of inventory, the Baileys specifically stated in the proposed amended complaint:
[FNBC] controlled the transaction between Bailey Tire and IMSH. At the direction of [FNBC], IMSH took inventory not included in the sale. The wholesale value of this inventory was $168,000, the retailer's margin was approximately fifteen percent and:he retail value was $193,200. This inventory ... was the property of Bailey Tire. Had it not been for the wrongful act of [FNBC] in converting this inventory, this sum would have been available ... for the reduction of the debt of Bailey Tire to [FNBC]. [The Baileys] had guaranteed *192 Bailey Tire's debt to [FNBC]. As it was, the [Baileys] were required to sell their home and other personal assets to pay Bailey Tire's debt.
In their proposed amended complaint, the Baileys sought judgment in the sum of $350,926.17.

6. BAILEYS SEEK PARTIAL SUMMARY JUDGMENT
On November 28, 2005, the Baileys filed a motion for partial summary judgment. The Baileys alleged that they were entitled to judgment as a matter of law on the following issues:
1. The contracts attached to the Amended Complaint were executed on the basis of negligent or reckless misrepresentations by [FNBC] or were the result of a mutual mistake. In either event, the [Baileys] are entitled to avoid the contracts.
2. [FNBC] is liable to the [Baileys] for the sum of $57,726.17 as a result of the wrongful set-off alleged in paragraph nine of the Amended Complaint.
3. [FNBC] is liable to the [Baileys] in the sum of $100,000 as a result of the transfer of that sum by the [Baileys] as described in paragraph eight of the Amended Complaint.

7. DECISION BY DISTRICT COURT
The district court heard the parties' pending motions on December 6, 2005. The parties' arguments concerning the motion to amend the complaint are not contained in the record before us, the record simply indicating "ARGUMENTS OF COUNSEL HEARD." After hearing arguments on the motion to amend, the court stated that the motion was denied. The court subsequently entered an order on December 15 denying the Baileys' motion to amend the complaint. In the December 15 order, the court stated that "after consideration of the pleadings, the original Complaint, the proposed Complaint and argument submitted by counsel, the Court [found] that [the Baileys'] Motion to Amend the original Complaint should be denied." The court did not further specify its reasons for the denial.
The district court also received evidence at the December 6, 2005, hearing with respect to the motions for summary judgment. Because the evidence received in support of the motions for summary judgment was not considered by the court in reaching its decision on the Baileys' motion to amend and because our resolution of the Baileys' assignment of error with respect to that decision is dispositive of this appeal, we have not set forth any of the evidence received by the district court in connection with the motions for summary judgment. On December 29, the court entered an order denying the Baileys' motion for partial summary judgment and granting FNBC's motion for summary judgment. Because they are not relevant to our resolution of the present appeal, we have not further detailed the district court's findings with regard to the motions for summary judgment.

III. ASSIGNMENTS OF ERROR
The Baileys assert that the district court erred in (1) denying their motion to amend the complaint, (2) granting FNBC's motion for summary judgment, and (3) denying their motion for partial summary judgment.

IV. STANDARD OF REVIEW
As stated above, this action was filed on June 21, 2005, and thus, we apply the new rules for notice pleading. See Neb. Ct. R. of Pldg. in Civ. Actions 1 (rev.2004). Neither this court nor the Nebraska Supreme Court has previously discussed the standard of review for denial of *193 a motion to amend filed under Neb. Ct. R. of Pldg. in Civ. Actions 15(a) (rev.2003). Because Nebraska's current notice pleading rules are modeled after the Federal Rules of Civil Procedure, we look to federal decisions for guidance. See Kellogg v. Nebraska Dept. of Corr. Servs., 269 Neb. 40, 690 N.W.2d 574 (2005).
Nebraska's rule 15(a) provides, in relevant part, as follows:
A party may amend the party's pleading once as a matter of course before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may amend it within 30 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires.
Similarly, Fed.R.Civ.P. 15(a) provides that once a responsive pleading has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."
Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving partly [sic], futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated.
Roberson v. Hayti Police Dept., 241 F.3d 992, 995 (8th Cir.2001), citing Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).
Federal courts generally review the denial of a motion to amend for an abuse of discretion. See, In re K-tel Intern., Inc. Securities Litigation, 300 F.3d 881 (8th Cir.2002); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1484 (2d ed.1990). Federal case law from the Eighth Circuit indicates, however, that the Eighth Circuit reviews de novo the underlying legal conclusion of whether the proposed amendments to a complaint would have been futile. See, Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748 (8th Cir. 2006); U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552 (8th Cir.2006) (citing U.S. ex rel. Gaudineer & Comito, L.L.P. v. Iowa, 269 F.3d 932 (8th Cir. 2001)), cert. denied ___ U.S. ___, 127 S.Ct. 189, 166 L.Ed.2d 142. See, also, Corsello v. Lincare, Inc., 428 F.3d 1008 (11th Cir.2005) (underlying legal conclusion of whether particular amendment to complaint would have been futile is reviewed de novo); Miller v. Calhoun County, 408 F.3d 803 (6th Cir.2005) (where district court draws legal conclusion that amendment would be futile, conclusion is reviewed de novo).
We hereby adopt the federal standards of review outlined above. Accordingly, we review the district court's denial of the Baileys' motion to amend under Nebraska's rule 15(a) for an abuse of discretion. However, we review de novo any underlying legal conclusion that the proposed amendments would be futile.

V. ANALYSIS

1. DENIAL OF MOTION TO AMEND COMPLAINT
The Baileys assert that the district court erred in denying their motion to amend the complaint. The parties' arguments before the district court on the Baileys' motion to amend were not recorded in the record, and the court denied the Baileys' motion to amend before it received any evidence in support of or opposition to the parties' motions for summary judgment. The district court denied the *194 Baileys' motion from the bench, without stating its reasons for the denial, and it did not specify its reasons for the denial in the subsequent order ruling on the motion. The court did, however, specify that in denying the motion, it considered the pleadings on file, the proposed amended complaint, and argument submitted by counsel.
With regard to Nebraska's rule 15(a), it has been stated of the federal rule 15(a) that
an abuse of discretion may be found if the court simply denies the motion to amend without offering any explanation. On the other hand, when the reasons for the denial are readily apparent, the failure to include reasons is not a per se abuse of discretion, although the better practice is to state the reasons.
6 Charles Alan Wright et al., Federal Practice and Procedure § 1484 at 598-600 (2d ed.1990). Because the district court in this case did not specifically state its reasons for its denial of the motion to amend, we examine the record to see if the reasons for the denial are readily apparent. We also take this opportunity to state that the better practice for Nebraska trial judges denying motions to amend under Nebraska's rule 15(a) is to state their reasons for such denial on the record, either from the bench, in the order ruling on the motion, or both. In determining whether the reasons for the denial are readily apparent, we have examined the pleadings included in the transcript and the proposed amended complaint. Unfortunately, the argument submitted by counsel was not preserved in the record for our review. Although not evidence, such arguments would have been helpful in our examination of the district court's denial of the Baileys' motion to amend. Meaningful appellate review requires a record that elucidates the factors contributing to the lower court judge's decision. J.B. Contracting Servs. v. Universal Surety Co., 261 Neb. 586, 624 N.W.2d 13 (2001). In resolving this assignment of error, we have not considered any of the exhibits introduced in support of the parties' motions for summary judgment, as those exhibits, while part of our record on appeal, were not introduced into evidence in connection with the Baileys' motion to amend and made part of the record of the hearing on the motion to amend. See Lockenour v. Sculley, 8 Neb.App. 254, 592 N.W.2d 161 (1999) (in reviewing decision of lower court, appellate court considers only evidence included within record).

(a) Undue Delay, Bad Faith, and Unfair Prejudice
We find no indication of undue delay, bad faith, or unfair prejudice in the record. FNBC presents no arguments alleging that it would have been unfairly prejudiced had the district court granted the Baileys' motion to amend the complaint. FNBC's arguments relate more directly to the futility of any such amendment. For example, FNBC argues that the proposed amended complaint "was equally vulnerable to summary judgment." Brief for appellee at 16. We have addressed FNBC's arguments as to futility below.
FNBC also argues that:he Baileys' motion to amend was made for the sole purpose of avoiding summary judgment. To the extent that this argument can be seen as an argument that the Baileys' motion was filed with undue delay or in bad faith, we disagree. The Baileys' motion to amend, in large part, was premised on the parties' alleged mutual mistake and FNBC's alleged misrepresentations as to the possibility of an SBA guarantee of the loans to IMSH, Darley, and Yanke, as well as alleged misrepresentation by FNBC. The Baileys argue that *195 they first learned that it had never been possible to obtain an SBA LowDoc loan guaranty through discovery responses of FNBC dated September 29, 2005. FNBC' filed its motion for summary judgment on November 7. The Baileys filed their motion to amend on November 14, a week after FNBC filed its motion for summary judgment. Even if waiting from September 29 to November 14 to file the motion to amend could be considered undue delay, "[d]elay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment." Roberson v. Hayti Police Dept., 241 F.3d 992, 995 (8th Cir.2001). "`The burden of proof of prejudice is on the party opposing the amendment.'" Id. We see no proof of prejudice in the record before us with respect to the proposed amendment on the mutual mistake or misrepresentation theories, and FNBC presents no arguments to the contrary. We also note that requests for leave to amend under federal rule 15(a) have, in fact, been granted at hearings on motions to dismiss or for summary judgment. See 6 Charles Alan Wright et al., Federal Practice and Procedure § 1488 (2d ed.1990).
With respect to the conversion claim, FNBC presents no arguments in its brief on appeal stating specifically that there was any undue delay or bad faith in the Baileys' motion to amend with respect to the conversion claim or that it would have been unfairly prejudiced in any way by such an amendment of the original complaint.
It is not readily apparent from the record that the district court denied the Baileys' motion to amend on the basis of bad faith, undue delay, or unfair prejudice, and we conclude that a denial for any of those reasons in this case would have constituted an abuse of discretion. However, we must still consider whether the proposed amendments to the original complaint would have been futile and whether it is readily apparent from the record that the district court's denial of the motion was based on such futility.

(b) Futility of Amendment
We next consider by what standard to judge whether a proposed amendment under rule 15(a) is futile. Several federal courts hold that at a certain point in pretrial proceedings, a motion to amend the complaint should be judged under a standard comparable or identical to the standard for summary judgment. See Richard Henry Seamon, An Erie Obstacle to State Tort Reform, 43 Idaho L.Rev. 37 (2006). The First Circuit explains its rationale for applying such a standard as follows:
If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the "futility" label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6). . . . In this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory.... If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed,;he proposed amendment must be not only theoretically viable but also solidly grounded in the record.... In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.
Hatch v. Department for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir.2001) (citations omitted). See, also, Bethany Pharmacal Co., Inc. v. QVC, Inc., *196 241 F.3d 854 (7th Cir.2001) (amendment of complaint is futile if added claim would not survive motion for summary judgment). But see Peoples v. Sebring Capital Corp., 209 F.R.D. 428 (N.D.Ill.2002) (when no summary judgment motion pending, proposed amendment futile only if it could not stand Fed.R.Civ.P. 12(b)(6) motion to dismiss).
The Second Circuit offers a similar explanation as follows:
It is true that when a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief.... However, the rule is different where, as here, the cross-motion is made in response to a Fed.R.Civ.P. 56 motion for summary judgment, and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions. In the latter situation, even if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c).
Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir.2001).
Other federal courts appear to not make such a clear distinction between the standard or standards used to judge futility at various points in pretrial proceedings or simply apply the standard used to judge rule 12(b)(6) motions to dismiss. The Eighth Circuit has stated:
Although ordinarily the decision of whether to allow a plaintiff to amend the complaint is within the trial court's discretion, when a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion.
In re Senior Cottages of America, LLC, 482 F.3d 997, 1001 (8th Cir.2007). Other cases from the Eighth Circuit indicate, however, that leave to amend may be denied if the amended pleading could be defeated by a motion for summary judgment or dismissal. See, Holloway v. Dobbs, 715 F.2d 390 (8th Cir.1983); Collyard v. Washington Capitals, 477 F.Supp. 1247 (D.Minn.1979). We also note Rose v. Hartford Underwriters Ins. Co., 203 F.3d 417 (6th Cir.2000), a case from the Sixth Circuit, stating that the test for futility does not depend on whether the proposed amendment could be potentially dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a rule 12(b)(6) motion to dismiss.
We find the explanations and rationale used and applied by the First and Second Circuits to be sound and hold that if leave to amend is sought under Nebraska's rule 15(a) before discovery is complete and before a motion for summary judgment has been filed, the question of whether such amendment would be futile is judged by reference to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev.2003). Leave to amend in such circumstances should be denied as futile only if the proposed amendment cannot withstand a rule 12(b)(6) motion to dismiss. If, however, the rule 15(a) motion is made in response to a motion for summary judgment and the parties have presented all relevant evidence *197 in support of their positions, then the amendment should be denied as futile only when the evidence in support of the proposed amendment creates no triable issue of fact and the opposing party would be entitled to judgment as a matter of law.
In the present case, we decline to apply the newly enunciated standards for judging the question of futility, given that it does not appear from the record that the question of futility was in fact presented to and passed upon by the district court. In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. Watson v. Watson, 272 Neb. 647, 724 N.W.2d 24 (2006). In the present case, it is not readily apparent from the record developed in connection with the motion to amend that the district court denied the Baileys' motion to amend on the basis of futility, and we conclude that a denial on that basis would have constituted an abuse of discretion.

2. RULING ON SUMMARY JUDGMENT MOTIONS
The Baileys assert that the district court erred in granting FNBC's motion for summary judgment and in denying their motion for partial summary judgment. Given our above resolution of the Baileys' first assignment of error, we need not decide the Baileys' remaining assignments of error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. Castillo v. Young, 272 Neb. 240, 720 N.W.2d 40 (2006).

VI. CONCLUSION
The district court abused its discretion in denying the Baileys' motion to amend the complaint. Accordingly, we reverse, and remand for further proceedings consistent with the above analysis.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.