IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
**(Memorandum Web Opinion)**

MILLER V. FARMERS & MERCHANTS BANK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

HELEN MILLER AND LARRY MILLER, APPELLANTS,

V.

FARMERS AND MERCHANTS BANK, KEARNEY, NEBRASKA, FORMERLY KNOWN AS
KEARNEY STATE BANK & TRUST CO., ET AL., APPELLEES.

Filed May 17, 2016.    No. A-15-459.

Appeal from the District Court for Buffalo County: JOHN P. ICENOGLE, Judge. Affirmed.

Siegfried H. Brauer, of Brauer Law Office, for appellants.

David A. Yudelson and John V. Matson, of Koley Jessen, P.C., L.L.O., for appellee Farmers and Merchants Bank.

Richard Calkins, of Calkins Law Office, for appellee Gary Wheeler.

MOORE, Chief Judge, and INBODY and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Helen Miller and Larry Miller, wife and husband, (collectively "the Millers") appeal from the order of the district court of Buffalo County which entered summary judgment in favor of the appellees, Farmers and Merchants Bank, formerly known as Kearney State Bank & Trust Co. (the Bank); Joel Wheeler (Joel); and Gary Wheeler (Gary). We find no merit to the arguments raised on appeal and therefore affirm.

- 1 -

## II. BACKGROUND

The facts of this case are largely undisputed. The Millers were the sole shareholders, directors, and officers of a closely held Nebraska corporation and sole members and owners of a limited liability company. Helen also owned a commercial property, which she leased to the business entities. In May 2009, the Millers executed a promissory note in favor of the Bank and signed three deeds of trust to secure the note. Two deeds of trust were filed against the commercial property, and the third deed of trust was filed against the Millers' personal residence. At all relevant times, Larry was acting on behalf of and as a representative for Helen on matters relating to the Millers' businesses because of Helen's poor health.

When the Millers failed to make payments as required on the note, the Bank filed notices of default with the Buffalo County Register of Deeds in February 2011 with respect to the commercial property and residential property. Notice of default was mailed to Larry and Helen. A trustee's sale was scheduled for May 27, 2011. The Bank published notice of the sale in the local newspaper and mailed notice of sale to Larry. The notices indicate that both the commercial property and the Millers' personal residence will be sold to the highest bidder at the sale.

On May 23, 2011, Larry went to the Bank and met with Joel, who was the Bank's loan officer handling the Miller's note. Larry asked that the Bank postpone the trustee's sale because he believed he had a buyer willing to purchase his businesses at a price sufficient to satisfy the outstanding debt. Joel lacked the authority to postpone the sale, so he offered to present Larry's request to the Bank's loan committee, which was scheduled to meet the following day. Joel agreed to call and notify Larry of the committee's decision. The committee denied Larry's request, and Joel authored a letter on May 25, advising Larry of the committee's decision. Larry received the letter the morning of May 27, and by the time he called Joel, the sale of the commercial property had already been completed and the property had been sold to Gary, who tendered the highest bid. Our record does not indicate the disposition, if any, of the Millers' residence.

The Millers commenced this action on June 6, 2011 against the Bank, Joel, and Gary seeking to set aside the trustee's sale of the commercial property. An amended petition was filed on November 15. All of the defendants filed motions for summary judgment in January 2014. On February 28, the Millers filed a motion for leave to file a second amended complaint.

After holding a hearing on of the motions for summary judgment and leave to amend, the district court entered an order on July 1, 2014. Therein, the court denied the motion for leave to amend, and, finding that the evidence presented disputes as to the material facts and issues, the court denied the motions for summary judgment.

The district court entered a subsequent order on October 3, 2014 on its own motion. It found that the portion of its previous order overruling the motions for summary judgment had been inadvertently and erroneously included in the order, when in fact, the court had not yet considered the summary judgment issues. The court therefore vacated that portion of its prior order. It then thoroughly addressed the claims contained in the amended complaint and entered summary judgment in favor of the Bank, Joel, and Gary.

In an order dated May 6, 2015, the district court entered summary judgment for Gary on his counterclaim against the Millers. The Millers now appeal to this court.

## III. ASSIGNMENTS OF ERROR

The Millers' assignments of error can be summarized and restated into three issues: the district court erred in (1) reconsidering on its own motion its initial denial of summary judgment, (2) granting summary judgment in favor of the Bank, Joel, and Gary, and (3) overruling the Millers' motion for leave to file a second amended complaint.

## IV. STANDARD OF REVIEW

A trial court's order vacating or modifying its own judgment is reviewed for an abuse of discretion. See *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.*

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Coffey v. Planet Group, Inc.*, 287 Neb. 834, 845 N.W.2d 255 (2014). An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id.*

We review the district court's denial of a motion to amend the pleadings for an abuse of discretion. *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007). However, we review de novo any underlying legal conclusion that the proposed amendments would be futile. *Id.*

## V. ANALYSIS

### 1. JURISDICTION

Before addressing the assignments of error, we note that the Bank and Joel argue that because the Millers' notice of appeal specified only that they were appealing the May 6, 2015 order, we lack jurisdiction over their appeal which challenges rulings made in the October 3, 2014 order. We find no merit to this argument.

The jurisdictional requirements for commencing an appeal mandate that the appellant file a notice of appeal with the clerk of the district court and pay the docket fee. See Neb. Rev. Stat. § 25-1912 (Reissue 2008). There is no requirement that the notice of appeal identify the order from which the appeal is taken. The issues raised in an appeal are designated by those that are specifically assigned and specifically argued in the appellant's brief. See *Cain v. Custer County Board of Equalization*, 291 Neb. 730, 868 N.W.2d 334 (2015) (alleged error must be both specifically assigned and specifically argued in the brief of the party asserting error to be considered by an appellate court).

Here, the Millers' brief makes clear they challenge rulings made in the October 3, 2014 order. We note that the Millers previously attempted to appeal from that order, but because the district court had not yet ruled on Gary's counterclaim, we dismissed the appeal, docketed at case number A-14-961, for lack of jurisdiction on December 10, 2014. It was the disposition of the

counterclaim in the May 6, 2015 order that rendered the October 3, 2014 order final and appealable. Jurisdiction over this matter is therefore properly vested in this court.

## 2. COURT'S VACATION OF PRIOR ORDER

The Millers assert that the district court erred in reversing its summary judgment ruling on its own motion. They argue that it is the duty of the court to enforce the orders it enters as written, and the court's inconsistent orders deprived them of a just determination of the case. We disagree and find the court had the authority to vacate its order and enter a new judgment.

In civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgment at any time during the term in which the court issued it. *Fitzgerald v. Fitzgerald*, 286 Neb. 96, 835 N.W.2d 44 (2013). The Buffalo County District Court is in the Ninth Judicial District. The term of court for the Ninth Judicial District commences on January 1 of any given year and expires on December 31 of each year. Rules of Dist. Ct. of Ninth Jud. Dist. 9-1 (rev. 2010).

The district court's first order was filed on July 1, 2014 and the subsequent order was issued on October 3 of the same year. Therefore, the court had the authority to vacate its initial ruling because it did so in the same term of court. The question then becomes whether the court could do so *sua sponte* or whether a motion from a party was required.

In *Frerichs v. Nebraska Harvestore Systems, Inc.*, 226 Neb. 220, 410 N.W.2d 487 (1987), the Supreme Court rejected the argument that a district court may not reverse its order without the filing of a motion from a party. The court reiterated that a trial court may modify or vacate its judgment within the term of court, but the power to do so rests in the sound legal discretion of the court, and that such discretion must be exercised reasonably and not arbitrarily, depending upon the facts and circumstances as shown by the record. The record in *Frerichs* showed that the trial court vacated an earlier order overruling the defendants' motions for summary judgment because the court determined, after further reflection, that the evidence conclusively showed the applicable statute of limitations as to the implied warranty claim had run. On appeal, the Supreme Court found no abuse of discretion in the trial court acting *sua sponte* to correct its earlier order which the court determined was conclusively shown to be incorrect.

Here, it was within the district court's discretion to reverse its prior ruling. The court's subsequent order explained that the denial of summary judgment was an error, and in reality, the court had not yet reviewed the issues presented in the motions for summary judgment. The court then thoroughly addressed each claim raised in the amended complaint and explained why judgment as a matter of law was appropriate. As we determine below, the court properly granted the motions for summary judgment. Accordingly, based upon the facts and circumstances presented here, we find no abuse of discretion in the court's decision to vacate and reverse its earlier ruling on its own motion.

## 3. SUMMARY JUDGMENT

The Millers argue that the district court erred in granting the motions for summary judgment. A motion for summary judgment shall be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015). When reasonable minds can differ as to whether an inference can be drawn, summary judgment should not be granted. *Id*. In reviewing a

summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

It appears there are five bases to the Millers' claim that summary judgment was inappropriate: (1) the court erred in finding no fiduciary relationship between Larry and Joel, (2) the court erred in finding no consideration and no oral contracts for Joel's promise to ask for postponement of the sale and promise to notify Larry of the loan committee's decision, (3) the court erred in finding that the Bank conducted a proper sale pursuant the requirements of the Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2009 & Cum. Supp. 2014) (NTDA), (4) the Bank failed to comply with the notice requirements contained in the deeds of trust, and (5) the Bank failed to comply with the notice requirements contained in the NTDA. We address these contentions below.

(a) Fiduciary Relationship

The Millers first assert that the district court erroneously determined there was no fiduciary relationship between Larry and Joel. The existence of a fiduciary duty and the scope of that duty are questions of law for a court to decide. See *Gonzalez v. Union Pac. R.R. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011). The allegation of the existence of a confidential or fiduciary relationship is a legal conclusion only and insufficient to raise any issue of fact. *Id.*

A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Id.* In a confidential or fiduciary relationship in which confidence is rightfully reposed on one side and a resulting superiority and opportunity for influence are thereby created on the other, equity will scrutinize the transaction critically, especially where age, infirmity, and instability are involved, to see that no injustice has occurred. *Id.* But superiority of bargaining power alone does not create a fiduciary duty, because there must also be an opportunity to exercise undue influence. *Id.*

Under a deed of trust, no fiduciary relationship exists between a trustor and trustee. See Amy Hess et al., Bogert's Trusts and Trustees, the Law of Trusts and Trustees § 29 (2015). Instead, under a deed of trust, the relationship is analogous to that of a mortgagor and mortgagee and is characterized as a business relationship, rather than a fiduciary relationship. *Id.*

In the instant case, the Millers' amended complaint alleges there was a fiduciary relationship simply based on the "continuing business relationship" between Larry and Joel. Joel began working as a loan officer at the Bank in the fall of 2009. Thus, when the trustee sale occurred, Joel and Larry had been in a business relationship for approximately 18 months. In his deposition, Larry stated that he did not call Joel for advice regarding business decisions other than those involving banking, and the only time he would talk to Joel was in Larry's role as a customer and Joel's role as a bank officer regarding banking business. There was no evidence that Joel was acting or advising with the Millers' interests in mind. To the contrary, he was acting in the Bank's interest as the trustee by taking the necessary and proper steps to collect on the defaulted note. Thus, the relationship between Larry and Joel is properly characterized as a typical business relationship. Viewing the evidence in the light most favorable to Larry, we therefore find the district court did not err in concluding that there was no fiduciary relationship between Larry and Joel.

(b) Oral Contracts

The Millers also argue that the district court erred in finding that no enforceable contracts had been created when Joel promised to present the request to postpone the trustee's sale to the loan committee and promised to notify Larry of the committee's decision. They contend that the agreements were supported by consideration in the form of their refraining from filing bankruptcy, which would have placed an automatic stay on the trustee's sale. We find no merit to these claims.

Whether consideration for an agreement exists is generally a question of law. 17B C.J.S. *Contracts* § 1023 (2011). See also NJI2d Civ. 15.06 comment. Concerning questions of law, an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. *Keller v. Bones*, 260 Neb. 202, 615 N.W.2d 883 (2000). Lack of consideration is relevant to whether the parties have formed an enforceable contract because consideration is an essential element to the validity of a contract. See *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014). There is sufficient consideration for a promise if there is benefit to the promisor or any detriment to the promisee. *Bock v. Bank of Bellevue*, 230 Neb. 908, 434 N.W.2d 310 (1989). In order for a detriment to the promisee to constitute valid consideration for a note or contract, it must have been within the express or implied contemplation of the parties and known to and agreed to by them. *Schrempp v. Gallup*, 210 Neb. 415, 315 N.W.2d 248 (1982).

Here, the Millers claim that their withholding filing for bankruptcy was sufficient consideration to support the formation of a contract. However, to constitute consideration, a return promise must be bargained for. See Restatement (Second) of Contracts § 71 (1981). A return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. *Id*. In the typical bargain, the consideration and the promise bear a reciprocal relation of motive or inducement: the consideration induces the making of the promise and the promise induces the furnishing of the consideration. *Id*., § 71, comment *b*. Furthermore, the law is concerned with the external manifestation rather than the undisclosed mental state: it is enough that one party manifests an intention to induce the other's response and to be induced by it and that the other responds in accordance with the inducement. *Id*. It is not enough that the promise induces the conduct of the promisee or that the conduct of the promisee induces the making of the promise; both elements must be present, or there is no bargain. *Id*.

In the present case, there is no evidence that the Millers refraining from filing bankruptcy was bargained for. Larry does not claim that he told Joel he would refrain from filing for bankruptcy in exchange for Joel's promises. The sole fact that Larry claims he was induced to delay filing bankruptcy by Joel's promise to request a postponement is insufficient to support the creation of an enforceable contract; Larry delaying bankruptcy must also have induced Joel into making his promise to request postponement and notify Larry of the decision. That is not the case here. Joel's promises were not induced in any manner by Larry and any detriment to Larry was not communicated to Joel in exchange for Joel's promise. Therefore, we agree with the district court that no consideration existed to support the creation of an enforceable contract.

The Millers also challenge the district court's conclusion that to the extent there may have been an obligation or promise for communication from Joel to Larry, that obligation appears to

have been negated by Larry's actions. Because we determine that no enforceable contract was created, we need not address this argument.

### (c) Proper Sale

The Millers argue that the district court erred in finding that the Bank conducted a proper sale pursuant to NTDA requirements because the sale price of $155,000 was significantly less than the appraised value of the property. They cite no authority to support their argument. Contrary to the Millers' argument, the NTDA requires that the trustee sell the property at public auction to the highest bidder. See Neb. Rev. Stat. § 76-1009 (Cum. Supp. 2014). This procedure was followed in the present case. We therefore find this argument without merit.

### (d) Notice

The Millers further claim that summary judgment was inappropriate because the Bank failed to comply with the notice requirements contained in the deeds of trust and the NTDA. These claims, however, were not raised in the operative complaint. The only issue regarding insufficient notice contained in the amended complaint is the allegation that the notices of default were deficient because they did not provide the Millers notice of what sum of money was actually required to cure the default. The complaint did not allege that the notices of default or sale were deficient because they were not sent or because they were not sent to Helen separately as the Millers now argue on appeal.

Reinforcing our conclusion that these claims were not raised in the operative complaint is the proposed second amended complaint, which added claims alleging that the Bank failed to serve notice of default and notice of the sale on Helen. Because these claims were not presented to the trial court, they cannot now be raised on appeal. See *First Express Services Group, Inc. v. Easter*, 286 Neb. 912, 840 N.W.2d 465 (2013) (when a party raises an issue for the first time on appeal, we will disregard it because a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition). We therefore find that the district court did not err in granting the motions for summary judgment.

### 4. LEAVE TO AMEND

Finally, the Millers argue that the district court erred in denying their motion for leave to file a second amended complaint. We disagree.

A party may amend the party's pleading once as a matter of course before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted, the party may amend it within 30 days after it is served. Neb. Ct. R. Pldg. § 6-1115(a). Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. *Id.* A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the nonmoving party can be demonstrated. *Hayes v. Cty. of Thayer*, 21 Neb. App. 836, 844 N.W.2d 347 (2014).

The Millers argue that the court erred in denying them leave to amend because the Bank, Joel, and Gary failed to demonstrate that amending the complaint would cause undue delay or

unfair prejudice. We find no error in the court's decision, however, because amending the complaint would have proved futile. An appellate court will affirm a lower court's ruling which reaches the correct result, albeit based on different reasoning. *Doe v. Bd. of Regents of Univ. of Nebraska*, 283 Neb. 303, 809 N.W.2d 263 (2012).

This court has previously determined that if leave to amend is sought before discovery is complete and neither party has moved for summary judgment, futility is judged by a liberal standard and an amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief on some cognizable theory. See *Hayes v. Cty. of Thayer*, *supra*; *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007). If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been filed, the standard for assessing futility is that the proposed amendment must be not only theoretically viable but also solidly grounded in the record and supported by substantial evidence sufficient to give rise to a triable issue of fact. See *Hayes v. Cty. Of Thayer, supra*; *Bailey v. First Nat. Bank of Chadron, supra*.

In the present case, in addressing the motion for leave to amend, the court's October 3, 2014 order provides that when the Millers' motion was filed, the matter had been pending for over two years, the parties had been given ample opportunities to previously amend their pleadings, and it appeared that discovery had been completed. Thus, at the time the Millers sought leave to amend, discovery had closed and all three defendants had moved for summary judgment. We therefore apply the heightened standard for futility contained in *Hayes* and *Bailey*.

The proposed amendments would have added two additional causes of action: "Failure to Provide Plaintiff Helen Miller with Statutory Notice or Due Process" and "Gary Wheeler Not a Bona Fide Purchaser for Value." Upon our de novo review of the record, we find amendment would be futile because the proposed amendments are not solidly grounded in the record and supported by substantial evidence sufficient to give rise to a triable issue of fact.

In the first proposed amendment, Helen claims that the Bank failed to provide separate notice to her of either the default or the sale. However, the NTDA does not require that notices be mailed *separately* to each party. Rather, the applicable statute provides that a copy of any notice of default and of any notice of sale shall be mailed to each person who is a party to the trust deed at the same time. It further sets forth the manner and timing of such notices. See Neb. Rev. Stat. § 76-1008 (Reissue 2009). The deeds of trust contain both Helen and Larry's names and a joint address for them. Notice of default was mailed to the address provided in the deeds and addressed to both Helen and Larry, thereby satisfying the statutory notice requirements for notice of default.

Regarding the proposed claim that the Bank failed to provide notice of the trustee sale to Helen, Larry confirmed that he received actual notice. While we agree that the Bank did not separately notify Helen, Larry agreed that he was acting on Helen's behalf at all relevant times and that he deliberately did not relay information to her regarding the deeds of trust. There is no evidence that had separate notice been mailed to Helen, that Larry would have shared that information with her; in fact, the record refutes it. Therefore, this proposed amendment does not give rise to a triable issue of fact and was properly denied.

The second claim the Millers attempted to add in their second amended complaint alleged that Gary was not a bona fide purchaser for value. They claimed that Gary failed to inquire as to

the nature of any claim of right of theirs, and had he done so, he would have been on notice that they continued to assert claims of ownership of the commercial property.

A bona fide purchaser is one who pays a valuable consideration, has no notice of outstanding rights of others and who acts in good faith. *Nordhues v. Maulsby*, 19 Neb. App. 620, 815 N.W.2d 175 (2012). The necessary notice referred to may be imparted to a prospective purchaser by actual or constructive notice of facts which would place a reasonably prudent person upon inquiry as to the title he is about to purchase. *Id.*

In addition, Neb. Rev. Stat. § 76-1010(1) (Reissue 2009) allows the trustee's deed to confer additional protection against attacks on the sale, providing in relevant part:

> The trustee's deed may contain recitals of compliance with the requirements of sections 76- 1001 to 76-1018 relating to the exercise of the power of sale and sale of the property described therein, including recitals concerning any mailing, personal delivery and publication of the notice of default, any mailing and the publication and posting of the notice of sale, and the conduct of sale; and such recitals shall constitute prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

The trustee's deed in the present case includes recitals as described in § 76-1010(1). Thus, there is conclusive evidence that Gary qualifies as a bona fide purchaser for value. The additional problem with the Millers' argument is that even if Gary had made further inquiry, there were no outstanding rights of others of which he would have become aware. Gary understood he was purchasing the commercial property from a trustee's sale, which necessarily occurs after the land owner has defaulted on an obligation. But the Millers had no rights other than their ownership at the time of the sale, which was extinguished once the sale was completed. Where the trustee, by the terms of the trust, has power to transfer or encumber property of the trust estate, one dealing with him in good faith is not bound to go further and ascertain whether in fact the act of the trustee is justified, and that no breach of trust is intended, unless the transaction in view of the trust relation is an unusual one. *Love v. Fauquet*, 184 Neb. 250, 166 N.W.2d 742 (1969). We therefore conclude that the proposed amendment is not supported by substantial evidence sufficient to give rise to a triable issue of fact, and thus the district court did not err in denying leave to file a second amended complaint.

## VI. CONCLUSION

We conclude that the district court did not err in vacating its earlier order on its own motion, granting the motions for summary judgment, or denying leave to amend. We therefore affirm.

AFFIRMED.