Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/29/2022 09:06 AM CDT

- 767 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

Nicole Bolden, individually and as Special
Administrator of the Estate of NiMarah
Robinson, and Marcel Robinson, appellants,
v. Board of Regents of the University of
Nebraska, doing business as University
of Nebraska Medical Center, and
Calida Gardner, C.N.M.,
M.S.N., appellees.

___ N.W.2d ___

Filed March 29, 2022.    No. A-21-245.

1. **Motions to Dismiss: Jurisdiction: Pleadings: Evidence.** When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence.

2. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

3. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

- 768 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

4. **Pleadings: Appeal and Error.** Permission to amend a pleading is addressed to the discretion of the trial court, and the trial court's decision will not be disturbed absent an abuse of discretion.

5. ____: ____. A finding that an amendment to a pleading would be futile is reviewed de novo.

6. **Motions to Dismiss: Jurisdiction: Rules of the Supreme Court: Pleadings.** When a motion to dismiss raises a defense under Neb. Ct. R. Pldg. § 6-1112(b)(6) and any combination of § 6-1112(b)(2), (4), and (5), the court should consider dismissal under § 6-1112(b)(2), (4), and (5) first and should consider dismissal under § 6-1112(b)(6) only if it determines that it has jurisdiction and that process and service of process were sufficient.

7. **Summary Judgment: Motions to Dismiss: Jurisdiction: Affidavits.** When the issue on a motion to dismiss is personal jurisdiction, affidavits may be submitted without converting the motion into one for summary judgment.

8. **Notice: Service of Process.** Although Neb. Rev. Stat. § 25-505.01 (Reissue 2016) does not require service to be sent to the defendant's residence or restrict delivery to the addressee, due process requires notice to be reasonably calculated to apprise interested parties of the pendency of the action and to afford them the opportunity to present their objections.

9. **Jurisdiction: Rules of the Supreme Court: Pleadings: Appeal and Error.** When reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo.

10. **Judgments: Jurisdiction: Appeal and Error.** An appellate court reviews a lower court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party.

11. **Pleadings: Affidavits: Appeal and Error.** If the lower court does not hold a hearing and instead relies on the pleadings and affidavits, then an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.

12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

13. **Motions to Dismiss: Rules of the Supreme Court: Pleadings.** A motion to amend should only be deemed as being futile if the amendment could not survive a Neb. Ct. R. Pldg. § 6-1112(b)(6) motion to dismiss.

- 769 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

14. **Estoppel: Equity.** Under the doctrine of equitable estoppel, estoppel applies when a party engages in (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel.

15. **Equity: Estoppel: Fraud: Limitations of Actions.** The equitable doctrine of estoppel may, in a proper case, be applied to prevent a fraudulent or inequitable resort to a statute of limitations, and a defendant may, by his or her representations, promises, or conduct, be so estopped where the other elements of estoppel are present.

16. **Equity: Estoppel.** Equitable estoppel rests largely on the facts and circumstances of the particular case and will be applied where the wisdom and justice of the principle are founded upon equity, morality, and justice in accordance with good conscience, honesty, and reason. Under such circumstances, the doctrine subserves its true purpose as a practical, fair, and necessary rule of law.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Corey L. Stull and Nolan J. Niehus, Senior Certified Law Student, of Atwood, Holsten, Brown, Deaver, Spier & Israel Law Firm, P.C., L.L.O., for appellants.

David D. Ernst and Kellie Chesire Olson, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellee Board of Regents.

Robert A. Mooney, Emily E. Palmiscno, and John A. McWilliams, of Sodoro, Mooney & Lenaghan, L.L.C., for appellee Calida Gardner.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

- 770 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

Welch, Judge.

## I. INTRODUCTION

Nicole Bolden, individually and as special administrator of the estate of NiMarah Robinson, and Marcel Robinson (collectively Appellants) appeal the Douglas County District Court's order denying their motion for new trial or to reconsider the court's granting of summary judgment in favor of Calida Gardner, C.N.M., M.S.N.; granting the motion to dismiss filed by the Board of Regents of the University of Nebraska, doing business as University of Nebraska Medical Center (UNMC); and in overruling their motion to amend their complaint. For the reasons stated herein, we affirm in part, and in part reverse and remand for further proceedings.

## II. STATEMENT OF FACTS

### 1. Original and Amended Complaint

Appellants filed a medical malpractice action against Gardner and UNMC alleging that Gardner, in her capacity as an employee or agent of UNMC, and UNMC negligently failed to provide proper medical care to Bolden and her unborn child, NiMarah, which resulted in NiMarah's death and damages to Bolden. Appellants specifically alleged that on October 3, 2016, Bolden sought prenatal care at UNMC and was initially evaluated by Gardner, who represented that she was a certified midwife. Thereafter, Bolden alleged Gardner continued to provide ongoing care for Bolden at UNMC. On March 12, 2017, in Bolden's third trimester, she began experiencing high blood pressure and high glucose levels. Bolden asserted that she was not informed that she presented with these symptoms by either Gardner or other medical staff. During a March 30 prenatal visit, Gardner indicated to Bolden that Bolden's baby was larger than expected. At her April 11 prenatal visit, Bolden was informed that she had gained 14 pounds in 2 weeks, had edema in her legs, and had high blood pressure. On April 23, when Bolden went to the UNMC emergency room where she expressed concern that her baby was not moving, she

- 771 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

was admitted with high blood pressure, headaches, pain and swelling in her legs, and protein in her urine. Although doctors diagnosed Bolden with preeclampsia, they released her the following day with instructions to return on April 28 for labor induction. However, on April 27, Bolden returned to the emergency room with extremely high blood pressure and lack of fetal movement. At that time, doctors informed Bolden that her baby suffered an intrauterine fetal death. Bolden underwent an emergency cesarean section to deliver her baby.

In sum, Appellants alleged in their amended complaint that Gardner and UNMC failed to properly document, record, assess, diagnose, and treat Bolden and NiMarah; that their conduct fell below the requisite standard of care; and that their negligence was the proximate cause of their injuries and damages. Appellants then allege they filed a tort claim pursuant to the State Tort Claims Act (STCA) directed at Gardner and UNMC on February 6, 2019. Appellants allege the State Claims Board (Board) failed to dispose of the claim within 6 months; they withdrew the claim on March 13, 2020; and they filed their complaint on March 31, which complaint was amended that same day.

## 2. Gardner's Motion to Dismiss and/or Motion for Summary Judgment and Appellants' Motion to Amend

On May 5, 2020, Gardner filed a motion to dismiss or, in the alternative, a motion for summary judgment contending that she was not an employee of UNMC, but instead was an employee of Nebraska Medicine; that she was improperly served; and that the pleadings showed that Bolden's complaint was time barred because the alleged malpractice occurred over 3 years prior to the date of the complaint. The following month, Appellants filed a motion to amend their complaint for a second time. In the motion and proposed second amended complaint, Appellants asserted and averred that Gardner actively misrepresented her employer and that

- 772 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

Appellants had no way of learning Gardner's actual employer. Specifically, Appellants averred that while under the care of Gardner and UNMC, Gardner was wearing a UNMC badge and UNMC scrubs and appeared to Bolden to be a UNMC employee. Appellants alleged Gardner provided Bolden with a UNMC brochure containing Gardner's picture, stated that she was "part of UNMC," spoke with Bolden about how midwives at the facility were legitimate medical providers, and stated that receiving prenatal care from midwives was a better option than receiving medical care from doctors. Bolden asserted that Gardner was listed as an instructor on the UNMC website, that Gardner was listed in UNMC's staff directory, and that Bolden had no way of knowing that Gardner was employed anywhere other than UNMC.

Additionally, Appellants averred that after filing the claim under the STCA, Appellants' counsel checked on the claim's status on five different occasions; each time, counsel received a response that the claim was still under investigation or that there was no recommendation. Appellants' proposed second amended complaint alleged that they did not withdraw their claim on August 13, 2019, as permitted under the STCA, because they relied upon representations by the State that the claim was still under investigation. After receiving no disposition of the claim, on March 13, 2020, Appellants withdrew their STCA claim and filed a complaint against Gardner and UNMC on March 31, which complaint was amended that same day. Appellants served Gardner via certified mail using Gardner's address as listed in the UNMC staff directory. The certified mail return receipt showed that the complaint was signed on April 4 by an agent, who was the mail carrier for UNMC.

In connection with their motion to amend, Appellants sought to add Nebraska Medicine as a party and add three additional UNMC doctors as parties. Appellants argued that the additional information and parties sought to be included in the proposed second amended complaint arose out of the same transaction and occurrence of Gardner's negligence and

- 773 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

that, had Gardner not misrepresented her employer information, Appellants would have timely sued Nebraska Medicine. Further, Appellants asserted that Nebraska Medicine received notice of the claim against Gardner and UNMC and that Nebraska Medicine would not be prejudiced by being brought into the action.

(a) Evidence in Support of Summary
Judgment and Motion to Amend

The court heard the motions in mid-June 2020. The court took judicial notice of the court file, including the complaint and the return of service concerning Gardner, and accepted evidence on the condition that it would not be considered unless the motion was converted to summary judgment. Gardner offered into evidence affidavits by Gardner and David Poppert, a risk manager at UNMC. In response, Appellants objected that Gardner did not properly submit her motion for summary judgment, since Gardner did not file an undisputed statement of facts or an index of evidence as required by Neb. Ct. R. § 6-1526 (rev. 2018) and Neb. Rev. Stat. § 25-1332 (Cum. Supp. 2020). Appellants offered into evidence an affidavit by Bolden and two affidavits by her attorney with attachments. The attachments included Appellants' completed and signed STCA claim form and a typed statement; emails indicating the STCA claim was still under review; Gardner's employee information on UNMC's website showing Gardner was a UNMC instructor; a profile at UNMC that listed Gardner as UNMC's "new midwife faculty member"; the signed certified return receipt for service on Gardner; and the UNMC staff directory.

In connection with Appellants' motion to amend, the court again took judicial notice of the court file; evidence previously received, including the exhibits offered by Appellants; and the motion for leave to amend with the attached proposed second amended complaint. The court also received and considered, over Appellants' objection, Gardner and UNMC's exhibit consisting of a supplemental affidavit by Poppert,

- 774 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

including the following attachments: a photograph of Gardner's employee badge and copies of Bolden's medical bills from Nebraska Medicine.

### (b) District Court Order

In August 2020, the court granted summary judgment in favor of Gardner due to Appellants' claim being barred by the statute of limitations and improper service. The court found that Gardner was an employee of Nebraska Medicine, not UNMC; Appellants' attempt to serve Gardner at UNMC was improper; there was no genuine issue of material fact as to Gardner's employment; Appellants' claim was barred by the statute of limitations; and no amendment could be made to the complaint to cure the statute of limitations bar to the action. The court denied Appellants' motion to amend, finding that the proposed amendment to add additional parties would be futile due to the expiration of the statute of limitations.

### 3. Bolden's Motion for New Trial or Motion to Reconsider and UNMC's Motion to Dismiss

Appellants timely filed a motion for new trial or to reconsider, and thereafter, UNMC filed a motion to dismiss. At the hearing on these motions, Appellants argued that summary judgment was improper because Gardner had not met her burden of proof or followed proper procedures for summary judgment; that Appellants presented evidence of a genuine issue of material fact, but the court did not apply the correct standard and considered improper evidence in ruling on the motion; and that the motion to amend was not futile.

UNMC's motion to dismiss generally asserted that Appellants' claims failed to state a claim for which relief could be granted under Neb. Ct. R. Pldg. § 6-1112(b)(6) for the reason that the statute of limitations had run on Appellants' claims.

In March 2021, the district court entered an order finding that summary judgment was proper, equitable estoppel did not apply, and Appellants should not be given leave to amend

- 775 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

their complaint. The court also granted UNMC's motion to dismiss, finding that Appellants' complaint was filed more than 6 months from the date they were eligible to withdraw their STCA claim and that consequently, Appellants' complaint was barred by the statute of limitations. Appellants have timely appealed to this court.

## III. ASSIGNMENTS OF ERROR

Appellants assign as error, renumbered and restated, that the district court erred in (1) finding that service of process upon Gardner was improper; (2) dismissing Appellants' amended complaint against Gardner and UNMC based upon a violation of the statute of limitations, because the doctrine of equitable estoppel precluded the statute's application; (3) converting Gardner's motion to dismiss to a motion for summary judgment, considering Gardner's exhibit consisting of a supplemental affidavit by Poppert (including attachments in connection with the motions), and granting summary judgment when Gardner failed to comply with §§ 6-1526 and 25-1332; and (4) denying their motion to amend their complaint.

## IV. STANDARD OF REVIEW

[1] When a trial court relies solely on pleadings and supporting affidavits in ruling on a motion to dismiss for want of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction to survive the motion. *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014). However, if the court holds an evidentiary hearing on the issue or decides the matter after trial, then the plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence. *Id.*

[2] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Baker-Heser v. State*, 309 Neb. 979, 963 N.W.2d 59 (2021).

- 776 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

[3] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id*.

[4,5] Permission to amend a pleading is addressed to the discretion of the trial court, and the trial court's decision will not be disturbed absent an abuse of discretion. *Ferer v. Aaron Ferer & Sons*, 278 Neb. 282, 770 N.W.2d 608 (2009). However, a finding that a proposed amendment to a pleading would be futile is reviewed de novo. See *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007).

## V. ANALYSIS

### 1. Service of Process

Appellants first contend that the district court erred in finding that they failed to properly serve Gardner. Gardner brought her motion under § 6-1112(b)(2), (4), (5), and (6). In connection with her § 6-1112(b)(2), (4), and (5) motions, Gardner alleged that Appellants improperly served her and that the district court lacked personal jurisdiction over her.

[6] The Nebraska Supreme Court has stated:

> [W]hen a motion to dismiss raises a defense under § 6-1112(b)(6) and any combination of § 6-1112(b)(2), (4), and (5), the court should consider dismissal under § 6-1112(b)(2), (4), and (5) first and should consider dismissal under § 6-1112(b)(6) only if it determines that it has jurisdiction and that process and service of process were sufficient.

*Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 642, 844 N.W.2d 264, 274 (2014). Accordingly, we first address the district court's service-of-process-related findings governing

- 777 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

Gardner in order to determine whether we need to address the court's rulings under § 6-1112(b)(6).

[7] In connection with her § 6-1112(b)(2), (4), and (5) motions, Gardner offered, and the court received into evidence, affidavits by Gardner and Poppert, a risk manager at UNMC. Appellants offered, and the court received into evidence, an affidavit by Bolden and two affidavits by her attorney with attachments. Although Appellants contend the court abused its discretion in converting Gardner's motion to a summary judgment, the Nebraska Supreme Court has held that when the issue on a motion to dismiss is personal jurisdiction, affidavits may be submitted without converting the motion into one for summary judgment. See *RFD-TV v. WildOpenWest Finance*, 288 Neb. 318, 849 N.W.2d 107 (2014). Accordingly, the district court was authorized to receive and review the affidavits submitted on Gardner's § 6-1112(b)(2), (4), and (5) motions without converting the matter to a summary judgment proceeding.

The affidavits proffered by Gardner alleged that Gardner was not an employee of UNMC, that she was employed by Nebraska Medicine (a separate legal entity); that Appellants attempted to serve her at UNMC and not at Nebraska Medicine; and that, although Gardner received notice of the lawsuit shortly after it was served, she did not know the person who signed the return of service on her behalf nor did she authorize that person to do so. In response, Appellants alleged that Gardner was listed as an instructor on UNMC's website, together with information including her business address, phone number, and email address, as well as her degrees, training, and certificates; that Gardner had consistently informed Appellants that she was an employee of UNMC; that after serving Gardner at UNMC, Appellants received a "Return Receipt" signed by the UNMC mail carrier who checked a box denoting he was an "[a]gent" for Gardner; that Appellants filed a notice of claim with the Board against Gardner and UNMC based upon their understanding of Gardner and her employer;

- 778 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

that the Board consistently represented it was considering the claim, while neither Gardner, UNMC, or the Board ever hinted or suggested the claim involved the wrong employer or litigant or that Gardner was not properly served in connection with the litigation.

After reviewing this evidence, the district court found:

> The Court file contains a certified mail receipt with a postmark from Lincoln, Nebraska[,] on April 1, 2020[,] sent to . . . Gardner at [UNMC] in Omaha. It also contains a return receipt signed by an individual different than [Gardner] who is identified as an agent and it sets for a date of delivery of April 4, 2020. In her affidavit . . . Gardner states that she does not know the individual who signed the return of service and that she did not authorize said individual to accept service of process on her behalf. [Gardner's] statements are not refuted by any evidence. Therefore, the Court further finds [that] Gardner was not properly served in this action and that the [Appellants'] amended complaint should also be dismissed on the grounds of want of proper service.

To perfect service of a summons in this state, Neb. Rev. Stat. § 25-505.01 (Reissue 2016) provides, in relevant part:

> (1) Unless otherwise limited by statute or by the court, a plaintiff may elect to have service made by any of the following methods:
>
> . . . .
>
> (c) Certified mail service which shall be made by (i) within ten days of issuance, sending the summons to the defendant by certified mail with a return receipt requested showing to whom and where delivered and the date of delivery, and (ii) filing with the court proof of service with the signed receipt attached[.]

To perfect service on an individual in this state, Neb. Rev. Stat. § 25-508.01(1) (Reissue 2016) further provides that "[a]n individual party, other than a person under the age of

- 779 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

fourteen years, may be served by personal, residence, certified mail, or designated delivery service."

Appellants attempted to serve Gardner, an individual, by certified mail at the office of UNMC, which Appellants deemed to be Gardner's employer. Gardner claims that service was improper even though the certified mail return receipt was signed for by the UNMC mail carrier, attesting to be Gardner's agent; the certified mail service was served within 10 days of the issuance of the summons; and the return receipt was timely filed with the court. More specifically, Gardner claims that Appellants did not comply with § 25-505.01(1), because although she received the summons shortly after it was sent to the office of UNMC, UNMC was not her employer and the summons was signed for by an individual that she did not authorize to be her agent for service of process.

[8] In addressing a similar contention in *Doe v. Board of Regents*, 280 Neb. 492, 508, 788 N.W.2d 264, 280 (2010), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017), the Nebraska Supreme Court stated:

> Unlike many state statutes that permit certified mail service, § 25-505.01 does not require service to be sent to the defendant's residence or restrict delivery to the addressee. But due process requires notice to be reasonably calculated to apprise interested parties of the pendency of the action and to afford them the opportunity to present their objections.

Thus, the question here is whether Appellants' service efforts were reasonably calculated to apprise Gardner of the pendency of the action and to afford her the opportunity to present her objections to the action. The district court found that because notice was sent to the office of UNMC, which turned out not to be Gardner's actual direct employer, and was signed for by an individual to whom Gardner did not give explicit authority to accept service on her behalf, the due process criterion was not met in this instance. On this specific record, we disagree. Although Gardner offered affidavits which provided

- 780 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

that UNMC was not her direct employer, Appellants provided evidence which explained the source of their confusion. They claim that Gardner directly expressed to them that she was employed by UNMC; that she was listed on UNMC's website as being employed, at least in some capacity, by UNMC; and that Gardner herself acknowledged receipt of service shortly after it was served on an individual she claims was not authorized to accept service on her behalf.

In support of Gardner's contention that Appellants' service efforts did not satisfy due process requirements, Gardner cites to *Anthony K. v. State*, 289 Neb. 523, 855 N.W.2d 802 (2014). In *Anthony K.*, the Nebraska Supreme Court reviewed whether due process requirements were met when the plaintiff served 18 summons to the office of the Department of Health and Human Services to perfect service on 18 separate employees of that office in their individual capacities. The record included evidence that 15 of the employees no longer worked there and that as to the 3 employees who did, they attested that they did not receive the certified mail or learn about the summons until almost 1 year later. The plaintiffs did not even claim they properly served the 15 former employees. As to those specific facts, the Nebraska Supreme Court held:

We conclude that service by certified mail at DHHS was not "reasonably calculated to notify the defendants, in their individual capacities, of the lawsuit." [Citation omitted.] The plaintiffs elected to serve the defendants by certified mail at their place of employment. Although they were entitled to elect the method of service, they bore the risk that the method was not reasonably calculated to provide notice to the individual that he or she had been served. [The DHHS employee whose duty it was to sign for and receive all certified mail addressed to DHHS] did not know whether [the three active employees] worked for DHHS. He was not authorized to sign for their certified mail, and they did not receive the summonses. DHHS was the largest state agency of the State of Nebraska

- 781 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

at the time the lawsuit was filed and employed nearly 6,100 employees located across the state. The method of service by certified mail at DHHS was not reasonably calculated to notify [the three active employees] that they had been sued in their individual capacities. The district court properly dismissed all 18 DHHS employees in their individual capacities.

*Anthony K.*, 289 Neb. at 535, 855 N.W.2d at 811.

But *Anthony K.* is distinguishable from the instant case for several reasons. Here, Appellants attested that Gardner represented herself as being an employee of UNMC, that she was actively listed on the UNMC website as being employed by UNMC in some current capacity, and that she attested that she received the summons shortly after it was served.

[9-11] Notably, "[w]hen reviewing an order dismissing a party from a case for lack of personal jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(2), an appellate court examines the question of whether the nonmoving party has established a prima facie case of personal jurisdiction de novo." *VKGS v. Planet Bingo*, 285 Neb. 599, 603, 828 N.W.2d 168, 174 (2013). "An appellate court reviews a lower court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party." *Id*. "If the lower court does not hold a hearing and instead relies on the pleadings and affidavits, then an appellate court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party." *Id.* at 603-04, 828 N.W.2d at 174.

Applying that standard here, after reviewing the affidavits submitted by the parties, although Nebraska Medicine and UNMC apparently are different legal entities, Appellants supplied sufficient evidence to explain why they served Gardner at UNMC rather than at Nebraska Medicine. That evidence includes, but is not limited to, Gardner's alleged representations to Appellants that she worked for UNMC and was listed, at least in some capacity, as affiliated with UNMC on

- 782 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

UNMC's website. Further, the evidence indicated that although perhaps not employed by UNMC in her capacity as a midwife, Gardner had some current connection with UNMC. The apparent alleged connection between the entities, when taken together with the fact that Gardner received actual notice of the summons shortly after it was served, was sufficient, applying our requisite standard of review here, to find that Appellants made a prima facie showing that their service method complied with due process requirements. Accordingly, that portion of the district court's order which found that the complaint should be dismissed for improper service on Gardner is reversed.

## 2. Motions to Dismiss

Appellants next assign that the district court erred in granting Gardner and UNMC's § 6-1112(b)(6) motions and dismissing both Gardner and UNMC on the grounds that Appellants failed to file their lawsuit within the requisite statute of limitations period. More specifically, Appellants assign that the court erred in not finding that a factual question existed as to whether Gardner and UNMC should be equitably estopped from asserting a statute of limitations defense against them.

On the face of Appellants' amended complaint (as opposed to their proposed second amended complaint), they alleged that their malpractice claim had accrued by April 27, 2017; that on February 6, 2019, pursuant to the STCA, they filed their notice of tort claim against Gardner and UNMC, an alleged agency of the State of Nebraska; that when no action was taken by the State of Nebraska on their claim, they withdrew their claim on March 13, 2020; and that they commenced their lawsuit on March 31.

In its orders dated August 28, 2020, and March 3, 2021, the district court found, in part, that the medical malpractice claims filed by Appellants against Gardner and UNMC were time barred by the applicable statute of limitations. More specifically, the district court found in its March 3 order that pursuant to *Komar v. State*, 299 Neb. 301, 908 N.W.2d 610

- 783 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

(2018), Appellants filed this action "more than six months after the statute of limitations had run and more than six months after they first could have withdrawn their tort claim." As such, the district court sustained Gardner and UNMC's motions to dismiss filed pursuant to § 6-1112(b)(6).

At the time that Appellants filed their original notice of tort claim and lawsuit, they believed Gardner was an employee of UNMC and that UNMC was an agency of the State of Nebraska. As such, as originally pled, neither party disputes that Appellants filed a claim under the STCA and that Neb. Rev. Stat. § 81-8,227(1) (Reissue 2014) provides the applicable statute of limitations as to Appellants' complaint as originally filed. Section 81-8,227(1) provides, in pertinent part:

Except as provided in subsection (2) of this section, every tort claim permitted under the [STCA] shall be forever barred unless within two years after such claim accrued the claim is made in writing to the Risk Manager in the manner provided by such act. The time to begin suit under such act shall be extended for a period of six months from the date of mailing of notice to the claimant by the Risk Manager or [the] Board as to the final disposition of the claim or from the date of withdrawal of the claim under section 81-8,213 if the time to begin suit would otherwise expire before the end of such period.

Neb. Rev. Stat. § 81-8,213 (Reissue 2014) of the STCA provides:

No suit shall be permitted under the [STCA] unless the Risk Manager or [the] Board has made final disposition of the claim, except that if the Risk Manager or [the Board] does not make final disposition of a claim within six months after the claim is made in writing and filed with the Risk Manager in the manner prescribed by the [B]oard, the claimant may, by notice in writing, withdraw the claim from consideration of the Risk Manager or [the Board] and begin suit under such act.

- 784 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

In *Komar, supra*, the claimant similarly served a claim notice nearly 18 months after her claim accrued but prior to the 2-year limitations period set forth in § 81-8,227(1). When the Board's risk manager failed to dispose of the claim within 6 months of its filing, the claimant eventually withdrew the claim and filed suit within 6 months of that withdrawal, but not within 6 months of the date that the claimant could have withdrawn the claim. After stating that the 2-year limitation period referenced in § 81-8,227(1) governs both the time to submit a notice of claim to the risk manager and to commence suit, the Supreme Court explained:

> [The claimant] claimed she was entitled to the 6-month extension under § 81-8,227(1) and argued the extension began to run on the date she actually withdrew her claim, so her complaint filed the next day would be timely. The State argued that under this court's holdings in *Coleman v. Chadron State College*[, 237 Neb. 491, 466 N.W.2d 526 (1991), *overruled on other grounds, Collins v. State*, 264 Neb. 267, 646 N.W.2d 618 (2002), *disapproved on other grounds, Geddes v. York County*, 273 Neb. 271, 729 N.W.2d 661 (2007),] and *Hullinger v. Board of Regents*, [249 Neb. 868, 546 N.W.2d 779 (1996), *overruled on other grounds, Collins, supra, disapproved on other grounds, Geddes, supra*,] the 6-month extension began to run on the first day Komar could have withdrawn her claim, not on the date she actually withdrew it.
>
> In both *Coleman* and *Hullinger*, this court held: "'[A] claimant who files a tort claim with the Risk Manager of the . . . Board 18 months or more after his or her claim has accrued, but within the 2-year statute of limitations, *has 6 months from the first day on which the claim may be withdrawn from the claims board in which to begin suit*.'"

*Komar v. State*, 299 Neb. 301, 304, 908 N.W.2d 610, 612-13 (2018) (emphasis in original). Applying the principles articulated in *Coleman* and *Hullinger*, the Nebraska Supreme Court held:

[The claimant] urges this court to overrule our holdings in *Coleman* and *Hullinger*, and instead interpret § 81-8,227(1) to authorize a 6-month filing extension that runs from the date a claim is actually withdrawn, rather than the first date on which the claim could have been withdrawn under § 81-8,213. For the same reasons we rejected this interpretation in *Hullinger*, we reject it here. Such a construction would allow claimants to extend the 2-year limitations period for as long as they wanted and then receive an additional 6 months to file suit once they finally withdrew the claim. In addition, the expansive interpretation urged by [the claimant] runs contrary to the settled rule that statutes purporting to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign.

*Komar*, 299 Neb. at 313-14, 908 N.W.2d at 618.

On the face of the complaint, Appellants' claim accrued no later than April 27, 2017. Without extension, the 2-year statute of limitations would run on April 27, 2019, which was 2 years from the date Appellants' claim accrued. However, because Appellants filed their notice of claim on February 6, 2019, more than 18 months following the lawsuit's accrual date but before the 2-year limitations period, Appellants were entitled to a 6-month extension in which to file their claim as that extension is described in § 81-8,227(1). Appellants alleged that the Board failed to respond to their notice of claim within 6 months of their filing and that they eventually withdrew their claim. As such, applying the principles of *Komar*, the 6-month period within which Appellants were obligated to file their claim commenced to run on August 7, 2019, the first date upon which Appellants could have withdrawn their claim. See *Geddes v. York County*, 273 Neb. 271, 729 N.W.2d 661 (2007). This meant that Appellants were obligated to file their lawsuit on or before February 7, 2020. Because Appellants withdrew their claim and failed to file their lawsuit on or before

- 786 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

February 7, 2020, their lawsuit filed against Gardner, acting as an alleged agent of UNMC, and UNMC was untimely.

Notwithstanding this language in *Komar*, Appellants argue that the Nebraska Supreme Court's holding in *Collins v. State*, 264 Neb. 267, 646 N.W.2d 618 (2002), *disapproved on other grounds, Geddes, supra*, should dictate a different result. In *Collins*, the Nebraska Supreme Court addressed facts similar to the facts we summarized in *Komar* above; however, *Collins* is distinguishable in that the claimant in *Collins* never withdrew her claim prior to filing her lawsuit. Instead, the Board actually denied the claim in *Collins* and, despite the fact that the claimant failed to file suit within 6 months of the date she could have withdrawn it, the Nebraska Supreme Court held:

> Under the plain language of § 81-8,227, a claimant has 6 months to file suit after notice of the denial of the claim is mailed by the claims board. The reasoning of *Coleman* and *Hullinger* [governing situations in which a claimant chose to withdraw a claim from the claims board] does not apply to claims that are decided by the claims board. Accordingly, we hold that a claimant who files a tort claim with the Risk Manager of the . . . Board 18 months or more after his or her claim has accrued, but within 2 years as provided by § 81-8,227(1), has 6 months to file suit from the date the board gives written notice to the claimant as to the final disposition of the claim.

*Collins*, 264 Neb. at 272, 646 N.W.2d at 621.

Appellants argue that because they alleged the Board misrepresented on multiple occasions that it was considering their claim, Gardner and UNMC should be equitably estopped from asserting the statute of limitations provided in § 81-8,227(1) on the basis that, had the Board made a disposition of their claim, Appellants would have had an additional 6 months from the date of disposition to timely file their claim even if it was outside the period of time Appellants could have withdrawn it. But Appellants' argument is misplaced. The district court was requested to perform a § 6-1112(b)(6) analysis in

- 787 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

connection with Appellants' original claim as filed. As to that motion, the amended complaint, on its face, alleged that Appellants had withdrawn their claim and filed their lawsuit more than 6 months after the time Appellants could have withdrawn their claim. Applying the principles in *Komar v. State*, 299 Neb. 301, 908 N.W.2d 610 (2018), the district court properly dismissed Appellants' claim as time barred. Appellants' original amended complaint did not contain allegations governing misrepresentations by the Board or a request for equitable estoppel. Those issues were raised in connection with its motion to amend and proposed second amended complaint. We will consider that assignment and argument below. But as filed and originally pled, Appellants' amended complaint (as distinguished from their proposed second amended complaint) contained no such equitable allegations, and the district court properly found that under § 81-8227(1), Appellants' claim was not timely filed against UNMC or Gardner acting as its agent. This assigned error fails.

### 3. Summary Judgment Deficiencies

[12] Appellants next argue that the district court erred in converting Gardner's § 6-1112(b)(6) motion to a motion for summary judgment, considering Gardner's exhibit consisting of a supplemental affidavit by Poppert including attachments in connection therewith and allowing the matter to proceed notwithstanding Gardner's failure to comply with summary judgment procedural statutes. But as we noted in the previous section of the opinion, Appellants' claim as pled on its face demonstrates Appellants failed to state a claim upon which relief can be granted against Gardner and UNMC. As such, it was unnecessary to convert Gardner's motion to one of summary judgment. Any alleged error committed by the district court in connection with this assigned error is unnecessary to the disposition of this appeal. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Preserve the*

- 788 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

*Sandhills v. Cherry County*, 310 Neb. 184, 964 N.W.2d 721 (2021). This assigned error fails.

### 4. Motion to Amend

Appellants next assign that the district court erred in denying their motion to amend. In connection with this motion, Appellants tendered a proposed second amended complaint that generally averred various reasons why it originally filed suit against UNMC and not Nebraska Medicine; why it originally filed suit against Gardner in her capacity as an employee of UNMC and not Nebraska Medicine; and why it desired to amend to add Nebraska Medicine as a party and change Gardner's designation to an employee of Nebraska Medicine, to add three additional employees of UNMC as parties to the lawsuit, and to include equitable reasons why Gardner and UNMC, as well as Nebraska Medicine, should be estopped from asserting a statute of limitations defense in connection with their claims.

As it relates to Appellants' motion, the district court found that amending the complaint would be futile because "[t]o allow [Appellants'] motion and proposed amendments would place the physicians and Nebraska Medicine in the position of having to defend a time-barred lawsuit." As such, the court denied Appellants' motion to amend.

Appellants contend that the court erred in refusing to allow them to amend the complaint. In furtherance of their position, they argue that Gardner, the Board, UNMC, and Nebraska Medicine's acts and omissions created a factual question as to whether Gardner and UNMC, as well as Nebraska Medicine, should be estopped from asserting a statute of limitations defense and that the district court erred in failing to allow them to amend their complaint to add new parties and to assert their equitable theory.

[13] Permission to amend a pleading is addressed to the discretion of the trial court, and the trial court's decision will not be disturbed absent an abuse of discretion. *Ferer v. Aaron*

- 789 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

*Ferer & Sons Co.*, 278 Neb. 282, 770 N.W.2d 608 (2009). However, a finding that a proposed amendment to a pleading would be futile is reviewed de novo. See *Bailey v. First Nat. Bank of Chadron*, 16 Neb. App. 153, 741 N.W.2d 184 (2007). A motion to amend should only be deemed as being futile if the amendment could not survive a § 6-1112(b)(6) motion to dismiss. See *Bailey, supra*.

After reviewing Appellants' proposed amended complaint, the court found that amendment would be futile. Specifically, the district court found that "no reasonable amendments to an amended complaint of [Appellants] could be made which would allege an action that would not be time barred by the statute of limitations."

Appellants specifically argue that the district court erred in this finding for three reasons: First, Appellants argue that their new allegations of misrepresentations made by the Board governing their ongoing investigation of Appellants' claim were sufficient to create a factual question as to whether UNMC and its agents should be estopped from asserting a statute of limitations defense. Second, Appellants argue that a similar principle should apply in relation to their efforts to add three UNMC employees as parties to the lawsuit. Third, Appellants argue that their new allegations of misrepresentations made by Gardner and UNMC governing Gardner's employment status, followed by the concealment of Gardner's real employer by Gardner, UNMC, Nebraska Medicine, and the Board, created a factual question as to whether Nebraska Medicine and Gardner should be estopped from asserting a statute of limitations defense as to Appellants' claims filed against Nebraska Medicine and Gardner and as to whether Nebraska Medicine could be substituted as a party to the lawsuit. We will address these arguments independently.

Appellants first argue that their allegations in paragraphs 44 through 65 of the proposed second amended complaint were sufficient to create a factual question as to whether UNMC and its agents should be estopped from asserting a

- 790 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

statute of limitations defense to the claims filed against them. Specifically, Appellants argue the Board's multiple affirmative representations that they were in receipt of Appellants' claim, that they were reviewing the claim, and that a response would be forthcoming should be sufficient to preserve Appellants' claims against UNMC and its agents. We disagree.

[14] Under the doctrine of equitable estoppel, estoppel applies when a party engages in (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel. See *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021).

[15,16] In applying the doctrine of equitable estoppel to a statute of limitations defense, the Nebraska Supreme Court stated:

> The equitable doctrine of estoppel was discussed at length by this court in *State Farm Mut. Auto. Ins. Co. v. Budd*, 185 Neb. 343, 346, 175 N.W.2d 621, 623-24 (1970), [*overruled on other grounds, Aken v. Nebraska Methodist Hosp.*, 245 Neb. 161, 511 N.W.2d 762 (1994),] wherein it stated: "By the great weight of authority, the equitable doctrine of estoppel in pais may, in a proper case, be applied to prevent a fraudulent or inequitable resort to a statute of limitations and a defendant may, by his representations, promises, or conduct be so estopped where the other elements of estoppel are present. See

- 791 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

Annotation, 24 A.L.R.2d 1417. 'Equitable estoppel rests largely on the facts and circumstances of the particular case and will be applied where the wisdom and justice of the principle are founded upon equity, morality, and justice in accordance with good conscience, honesty, and reason. Under such circumstances, the doctrine subserves its true purpose as a practical, fair, and necessary rule of law.' *Koop v. City of Omaha*, 173 Neb. 633, 114 N.W.2d 380 [1962].

"'Equitable estoppels cannot in the nature of things be subjected to fixed and settled rules of universal application like legal estoppels, nor be hampered by the narrow confines of a technical formula.

"'Equitable estoppel rests largely on the facts and circumstances of the particular case . . . .

"'". . . a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith, relied thereon."' *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 [1966]."

*Muller v. Thaut*, 230 Neb. 244, 253-54, 430 N.W.2d 884, 890-91 (1988).

Appellants argue that the Board's representations that it was still investigating Appellants' claims and that a response would be forthcoming, on its face, states a claim for which relief can be granted applying the doctrine of equitable estoppel. As we stated earlier, once Appellants filed their notice of claim more than 18 months from the date the claim occurred, they were prohibited from filing their claim until the Board responded. However, because the Board failed to respond within 6 months of the time the claim was presented, Appellant then had 6 months from that date to withdraw their claim and file suit. See *Komar v. State*, 299 Neb. 301, 908 N.W.2d 610 (2018). Appellants claim they did not withdraw the claim during that time because of the Board's representations. But none

- 792 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

of Appellants' allegations suggest a time in which the Board agreed it would respond. And since the Board failed to do so within 6 months of the time in which Appellants filed their claim, Appellants were legally entitled to either (1) withdraw their claim and file suit within 6 months of the time they could have withdrawn the claim, see *Komar, supra*, or (2) wait until the Board responded and file their lawsuit within 6 months thereafter, see *Collins v. State*, 264 Neb. 267, 646 N.W.2d 618 (2002), *disapproved on other grounds, Geddes v. York County*, 273 Neb. 271, 729 N.W.2d 661 (2007). Appellants did neither. Instead of timely withdrawing their claim and filing suit, Appellants untimely withdrew their claim and filed suit. Applying the principles set forth in *Komar, supra*, Appellants' claim was untimely filed. Because Appellants had a remedy available to them notwithstanding the alleged representations of the Board, they failed to state a claim of good faith reasonable reliance on the Board's alleged misrepresentations. This first argument fails.

As it relates to Appellants' second argument, any attempt to add the three additional employees of UNMC to the lawsuit suffers the same fate. These additional parties were alleged to be employees of UNMC, and for the same reason we articulated above, the doctrine of equitable estoppel would not apply to render the claim timely filed against them. The claim filed against UNMC and its employees or agents was filed outside of the limitations period set forth in § 81-8,227(1), and the doctrine of equitable estoppel, as pled, does not bar its application. Appellants' second argument fails.

But we reach a different conclusion as to Appellants' third argument. Here, Appellants argue for a different application of the doctrine of equitable estoppel. Appellants argue that their multiple allegations of misrepresentations made by Gardner and UNMC that Gardner was an employee of UNMC, when taken together with their notice to the Board, placed Gardner, UNMC, Nebraska Medicine, and the Board on notice that Appellants were pursuing their lawsuit against the wrong

- 793 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

party. Notwithstanding this mistake, due to the alleged misrepresentations by Gardner and UNMC, Appellants allege that Gardner, UNMC, Nebraska Medicine, and the Board effectively "la[id] in the weeds" and concealed the identity of Gardner's true employer until after the statute of limitations had run. Appellants assert that those misrepresentations, followed by their subsequent concealment, created a factual question as to whether Nebraska Medicine and Gardner should be estopped from asserting a statute of limitations defense. We agree that a factual question exists, and the district court erred in failing to allow Appellants to amend as to this aspect of their claim.

The equitable doctrine of estoppel may, in a proper case, be applied to prevent a fraudulent or inequitable resort to a statute of limitations, and a defendant may, by his or her representations, promises, or conduct, be so estopped where the other elements of estoppel are present. *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988). Here, Appellants alleged (1) that Gardner and UNMC falsely represented Gardner's employer and that Gardner, UNMC, Nebraska Medicine, and the Board then concealed Gardner's true employer's identity once they learned Appellants mistakenly relied on it; (2) that by continuing to conceal the true identity of Gardner's employer, there was an intention that Appellants would continue to rely on the mistake of fact occasioned by the misrepresentations; (3) that Gardner, UNMC, Nebraska Medicine, and the Board had actual or constructive notice of the real facts; (4) that Appellants lacked knowledge and the means of knowledge of the true facts; (5) that Appellants relied in good faith on the original representations and subsequent concealment of Gardner's true employer's identity in pursuing a claim against UNMC under the STCA rather than pursuing a normal tort claim against Nebraska Medicine and Gardner; and (6) that had Appellants known the true identity of Gardner's employer, they would have timely filed a claim against Nebraska Medicine and Gardner within the 2-year statute of limitations.

- 794 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

Gardner and UNMC urge that Appellants' attempt to amend their complaint and substitute Nebraska Medicine for UNMC as a party also requires analysis of the relation-back doctrine found in Neb. Rev. Stat. § 25-201.02(2) (Reissue 2016), and its associated jurisprudence. We disagree. Section 25-201.02 provides, in pertinent part:

(2) If the amendment changes the party or the name of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading if (a) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, and (b) within the period provided for commencing an action the party against whom the claim is asserted by the amended pleading (i) received notice of the action such that the party will not be prejudiced in maintaining a defense on the merits and (ii) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

On its face, the relation-back doctrine applies when a lawsuit is timely brought against a mistaken party and the claimant desires to substitute a mistaken party for a proper one. In such circumstances, the claimant needs the relation-back doctrine in order for the substitution to be considered timely filed against the substituted party.

That is not the case here. As to Appellants' desire to substitute now, the original action was not timely filed. Relating the second amended complaint back to the first would not remedy the untimely filed original action. Instead, Appellants have alleged that they should be able to amend their original amended complaint to now sue Nebraska Medicine and Gardner and that both such parties should be equitably estopped from asserting a statute of limitations defense in its entirety. If they are equitably estopped from doing so, there is no need for application of the relation-back doctrine. And although both

- 795 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

doctrines involve similar or even overlapping considerations, the elements are separate and distinct.

We hold that in its second amended complaint, Appellants sufficiently alleged facts which could result in application of the doctrine of equitable estoppel to the statute of limitations defenses of Nebraska Medicine and Gardner acting in her capacity as an employee of Nebraska Medicine. Although we are mindful that the specific representations alleged were made by Gardner and UNMC, we recognize that as now alleged, Gardner is an employee of Nebraska Medicine which brings into question what information she had and which would be imputed to Nebraska Medicine. As such, we cannot say Appellants' second amended complaint, on its face, does not survive a § 6-1112(b)(6) analysis. As such, we hold the district court erred in failing to allow Appellants to amend their complaint as it relates to allegations against Nebraska Medicine and Gardner in her capacity as an employee of Nebraska Medicine.

## VI. CONCLUSION

In sum, we hold the district court erred in dismissing Appellants' complaint for failing to properly serve Gardner, but properly dismissed Appellants' first amended complaint because that claim, filed against Gardner, in her capacity as an employee of UNMC, and UNMC, was filed outside the applicable statute of limitations period set forth in § 81-8,227(1). The first amended complaint contained no allegations governing application of the doctrine of equitable estoppel. However, as to Appellants' motion to amend their complaint a second time to substitute Nebraska Medicine as a party and sue Gardner in her capacity as an employee of Nebraska Medicine, we hold the district court erred in failing to allow Appellants to so amend. Although we find that Appellants' second amended complaint could survive a § 6-1112(b)(6) motion to dismiss, we make no substantive determination as to whether Appellants' equitable estoppel claim will succeed on the merits. At this

- 796 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
BOLDEN v. BOARD OF REGENTS
Cite as 30 Neb. App. 767

stage of the proceedings, we need only find that, as pled, Appellants stated a claim upon which relief can be granted. As such, we affirm the district court's dismissal of Appellants' amended complaint and to that portion of the order overruling Appellants' motion to amend against UNMC or additional UNMC employees, but we reverse that portion of the district court's order denying Appellants' motion to amend as it relates to allegations against Nebraska Medicine and Gardner, as an employee of Nebraska Medicine, and remand the cause for further proceedings.

Affirmed in part, and in part reversed and remanded for further proceedings.